**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Guion T. DeLOACH, Defendant–**
**Appellant.**

No. 92–4895.

United States Court of Appeals,
Eleventh Circuit.

Oct. 7, 1994.

Albert J. Krieger, P.A., Miami, FL and Kenneth J. Kukec, Boca Raton, FL, for appellant.

Roberto Martinez, U.S. Atty., Linda Collins Hertz, Kathleen M. Salyer, and Peter Prieto, Asst. U.S. Attys., Miami, FL, for appellee.

Before HATCHETT and EDMONDSON, Circuit Judges, and MELTON *, Senior District Judge.

PER CURIAM:

Guion T. DeLoach appeals his jury conviction on fourteen counts for making false statements to federally insured lending institutions for the purpose of obtaining loans. DeLoach contends that the trial court erred in 1) permitting the Government to introduce evidence of the conviction of his severed co-defendant; and 2) prohibiting the defense from introducing statements made by a prosecutor during closing arguments in an earlier, factually related trial in which DeLoach had not been charged.[1] We affirm.

BACKGROUND

Mr. DeLoach was a lawyer in Naples, Florida, whose practice consisted chiefly of real estate work. He served as the attorney for co-defendant Darrell G. Brown, a real estate developer. During the 1980's, Brown developed several condominium complexes in Marco Island, Florida, including the "Seawinds" project at issue in this case.

In the early 1980's, Brown ran into trouble trying to sell units at the Seawinds development. To avoid immediate financial problems, Brown began to sell the units using a "creative financing" scheme in which Brown sold the units at a price substantially below the price stated on the appraisal or sales contract. The federally insured savings and loans were informed that the actual sales price was the appraisal or contract price, and they loaned on this higher amount. The seller would then "refund" to the buyer a portion of the excess funds, thereby creating a "cash reserve." The buyer would then use these funds to make mortgage payments, hoping that inflation would cause an increase in property values. But, property values did not rise, and the lenders eventually foreclosed on all of the condominiums.

DeLoach handled all closings on Seawinds sales. The documents he reviewed, prepared, or notarized stated that down payments had been made. Some down payments had been made by certified check. But, after the closings, DeLoach made other checks payable to the purchaser giving back the down payment along with additional funds representing the "cash reserve."

A grand jury first indicted DeLoach and Brown in 1987. That indictment was later dismissed because of prosecutorial misconduct. They were reindicted in the present case in 1989. At about the same time, Brown was also indicted in a different district on similar charges relating to condominiums at the same development but with a different co-defendant. In that case, *"Brown I,"* Brown's defense was reliance upon coun-

---

* Honorable Howell W. Melton, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

1. DeLoach also contends that insufficient evidence supported his conviction on the false state-

ment charges and that the trial judge erred in refusing to recuse himself. These contentions are without merit.

sel (DeLoach). Brown was acquitted. Later, the trials of DeLoach and Brown on the indictment at issue in this case were severed. Brown was convicted in his separate trial, and his conviction has been affirmed. *United States v. Brown*, 983 F.2d 201, 206 (11th Cir.1993). DeLoach was convicted of conspiracy and making false statements to a federally insured financial institution.

## DISCUSSION

### A. Co-defendant's Conviction

Upon learning that the Government intended to call co-defendant Brown as its last witness, DeLoach's counsel moved to exclude Brown's testimony or alternatively, to preclude the Government from eliciting Brown's earlier conviction.[2] The trial court denied the motion, but granted DeLoach's request for a cautionary instruction.[3] The court also granted DeLoach's request to admit evidence of Brown's earlier acquittal in *Brown I*.

The Government called Brown as its last witness. After establishing Brown's age and address, the prosecutor elicited from Brown that he had been convicted of conspiring to make false statements to savings and loans; of making false statements to savings and loans; and of using the mails in a scheme to defraud. The prosecutor then asked, "who were you convicted of conspiring with, sir?" DeLoach's counsel objected, and the court

immediately instructed the jury that the conviction was being admitted "solely" to assess Brown's credibility and not as evidence of DeLoach's guilt.[4]

On appeal, a district court's determination of admissibility of evidence will not be disturbed in the absence of a "clear showing that the trial court abused its discretion." *United States v. Griffin*, 778 F.2d 707, 709 (11th Cir.1985).

DeLoach contends that the introduction of Brown's conviction was gravely prejudicial and constituted reversible error. DeLoach specifically argues that, because he did not intend to raise Brown's conviction on cross-examination, there was no proper purpose for the Government to question Brown about his conviction; that in questioning Brown and in closing argument the Government improperly used Brown's conviction as substantive evidence against DeLoach; and that the trial court's cautionary instruction was inadequate. We disagree.

A co-defendant's guilty plea or conviction may be brought out at trial provided that 1) the evidence serves a legitimate purpose and 2) the jury is properly instructed about the limited use they may make of it. *United States v. King*, 505 F.2d 602, 607 (5th Cir.1974); *see also United States v. Countryman*, 758 F.2d 574 (11th Cir.1985); *United States v. Melton*, 739 F.2d 576, 578–79 (11th Cir.1984); *United States v. Edwards*, 716

---

**2.** DeLoach's counsel argued that, because he did not intend to attack Brown's credibility with the conviction, no relevant purpose existed for eliciting the conviction. The Government argued that Brown's prior conviction was relevant because during opening argument and throughout the cross-examination of the Government's witnesses, DeLoach, through counsel, had sought to portray himself as a victim and Brown as the culpable party.

**3.** In denying appellant's motion to exclude Brown's testimony or in the alternative to exclude evidence of Brown's conviction, the district court stated that the conviction was relevant because Brown continues to manifest belief in his innocence, and that the "jury should be able to examine that in light of a conviction for which he is … professing some innocence and examine his testimony in that context."

**4.** The district court gave the following instruction to the jury:

Well, ladies and gentlemen of the jury, Mr. Brown has told you of a prior conviction.

Now, your role here is to determine from the evidence that is presented in this case whether Mr. DeLoach is guilty or not guilty of the offenses charged in the indictment.

He is not on trial for any other offense, and the fact that Mr. Brown may have previously been convicted should not affect your evaluation of the evidence as to: One, the existence of a conspiracy; or, two, Mr. DeLoach's participation or not in that conspiracy.

So the fact that Mr. Brown may have previously been convicted is admitted solely for the purpose of your assessment of his credibility, all right, and the fact that he may have been convicted should not affect in any way your determination as to the guilt or innocence of Mr. DeLoach's participation in any conspiracy that you may find to exist or not exist or his participation or not in any conspiracy that you may find to exist or not exist.

(R9:388–89).

F.2d 822 (11th Cir.1983); *United States v. Borchardt*, 698 F.2d 697, 701 (5th Cir.1983); *United States v. Jimenez–Diaz*, 659 F.2d 562, 566 (5th Cir.1981); *United States v. Veltre*, 591 F.2d 347, 349 (5th Cir.1979).

■ To use one person's guilty plea or conviction as substantive evidence of the guilt of another is improper. *King*, 505 F.2d at 607. Two examples of the proper evidentiary use of such pleas are: 1) to impeach trial testimony; and 2) to reflect on the witness' credibility. *Id.* We have said that *when a co-defendant testifies*, either the Government or the defense may elicit evidence of a guilty plea or conviction to aid the jury in assessing the co-defendant's credibility. *United States v. Vigliatura*, 878 F.2d 1346, 1348 (11th Cir. 1989); *see also Griffin*, 778 F.2d at 710 n. 5. To blunt the impact of "expected attacks on the witnesses' credibility," the Government may disclose guilty pleas of Government witnesses. *Countryman*, 758 F.2d at 577; *Melton*, 739 F.2d at 578–79; *Veltre*, 591 F.2d at 349. We have also permitted the admission of a guilty plea or conviction to prevent the jury from reaching the erroneous inference that a co-defendant whom the evidence shows was also culpable had escaped prosecution, *see United States v. Jimenez–Diaz*, 659 F.2d 562, 565–66 (5th Cir.1981), and to bolster the credibility of the witness, *United States v. Hernandez*, 921 F.2d 1569, 1583 (11th Cir.1991).

First, we note that the record does not fully support DeLoach's claim that he did not intend to raise Brown's conviction on cross-examination. DeLoach's counsel never unequivocally committed to refrain from eliciting Brown's prior conviction. One of DeLoach's lawyers told the district court that he did not intend to elicit Brown's conviction in this case. But, his next words were equiv-

ocal: "I don't think we intend to elicit the fact of his conviction...." DeLoach's other lawyer indicated that because no one knew what Brown would say, it was possible that he would use the conviction.[5] Therefore, if defense counsel are to be believed, no one, not even defense counsel, knew, at the time the Government began its examination of Brown, whether or not the defense would elicit Brown's conviction on cross-examination.

■ Second, the defense invited the testimony about Brown's prior conviction. Beginning with its opening statement and throughout the Government's case, DeLoach sought to shift culpability to Brown and to portray him as the real culprit. For example during the opening statement, one of DeLoach's lawyers told the jury that the evidence would show "which individuals had the motivation to mislead, who was it that wanted to get a loan, who was it that wanted to sell a project, whose misrepresentation did the bank rely on." Thus, the defense sought to portray Brown, the seller, as the one with the motive to lie. During the cross-examination of a mortgage broker, the defense sought to establish that Brown was more actively involved in the transactions than the typical condominium seller. Also, during cross-examination of one of the buyers, DeLoach sought to portray Brown as untrustworthy by stressing his involvement in the fraud and that he had misled the buyer into believing the "creative financing" scheme had been disclosed to the savings and loans. Had Brown's prior conviction not been brought to the jury's attention, the inference might have been that Brown was permitted by the Government to go unpunished. We conclude that the prosecution had a proper purpose to elicit Brown's conviction.[6]

---

5. Defense counsel stated:
   And, Judge, if nothing else, the problem we have, quite frankly, is—and Mr. Brown is sitting in the back of the courtroom—we really have no idea what he's going to say until he takes the stand. So I can see him possibly saying something where, quite frankly, it may be that we may want to raise the issue of a conviction. I don't know.
   (R9:375).

6. DeLoach also claims that the Government improperly emphasized Brown's conviction and at-

tempted to use it as substantive evidence of appellant's guilt. Once again, the record does not support this contention. The prosecutor's passing reference to Brown's prior conviction during closing argument did not imply to the jury that, because Brown had been convicted, DeLoach must be guilty. Instead, references to Brown's conviction were made to rebut testimony that Brown had done nothing illegal, testimony which DeLoach had elicited on cross and used during closing argument. As a result, we conclude that

■ The trial court properly cautioned the jury that the conviction of co-defendant Brown could not be used to determine the guilt or innocence of DeLoach and could only be used to assess Brown's credibility. The law requires nothing more. *E.g., Borchardt,* 698 F.2d at 701 (jury must be given strong cautionary instruction that it may use guilty plea only to assess witnesses' credibility and not to create inference of guilt against accused).

We conclude that the district court did not abuse its discretion when it permitted the Government to introduce Brown's earlier conviction.

### B. *Exclusion of Prosecutor's Statements Made In Brown I*

■ In *Brown I,* Darrell Brown, the co-defendant in this case, and a different co-defendant, John Reventas, had been charged with conspiring to make false statements and with making false statements to a federally insured financial institution. As in this case, the charges stemmed from the sale of units at the Seawinds complex, but involved a different scheme. *See Brown,* 983 F.2d at 205 (discussing differences between scheme in this case and in *Brown I* ). Brown's defense was based upon his reliance on counsel, DeLoach. Both Brown and Reventas were acquitted in *Brown I.*

Relying on cases from the Second Circuit, *United States v. Salerno,* 937 F.2d 797, 811–12 (2d Cir.1991), *rev'd on other grounds,* — U.S. ——, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992), and *United States v. McKeon,* 738 F.2d 26, 27–34 (2d Cir.1984), DeLoach argues that the district court erred when it refused to admit portions of the prosecutor's closing argument in *Brown I* as admissions by a party opponent under Rule 801(d)(2) of the Federal Rules of Evidence.[7] DeLoach claims that the prosecutor's statements in *Brown I* contained assertions of fact which were inconsistent with the allegations made by the Government in this case.

Only the Second Circuit has squarely addressed this issue. In *McKeon,* the court said that opening statements of a defendant's attorney in a criminal case are admissible under Rule 801(d)(2) where they are: 1) "assertions of fact" that are the "equivalent of a testimonial statement by the [client];" and 2) "inconsistent with similar assertions in a subsequent trial." *McKeon,* 738 F.2d at 33; *see Salerno,* 937 F.2d at 811 (citing *McKeon* in dicta, indicating that statements meeting these requirements made by prosecutor during summation in prior, related case are admissible). The *McKeon* court also said that, "[s]peculations of counsel, advocacy as to the credibility of witnesses, arguments as to the weaknesses in the prosecution's case or *invitations to a jury to draw certain inferences should not be admitted.*" *McKeon,* 738 F.2d at 33 (emphasis added). Thus, in the Second Circuit an attorney's arguments may be admissible, but admissibility is tightly circumscribed.

The Government contends that a review of the prosecutor's comments that DeLoach sought to admit establishes that they failed to meet the requirements set out in *McKeon* and *Salerno* because the comments were neither statements of fact nor inconsistent with the Government's position in the present case. We agree.

The prosecutor's comments from *Brown I* at issue in this case are: 1) "[A] reasonable inference could be drawn from that particular incident back at Biscayne Federal is DeLoach told them if you tell the bank it is okay;" and 2) "Mr. Brown himself admitted, Guy DeLoach did not advise him not to tell the bank." We note incidentally that these statements were made by the prosecutor during closing argument, not during opening statements in which lawyers are, in a sense, prohibited from arguing. In addition, the *Brown I* prosecutor was engaged in "advoca-

---

there was no improper use of Brown's conviction.

7. The trial judge ruled that the prosecutor's arguments were inadmissible. He provided two bases for this ruling. First, he said that attorney's arguments are not evidence, noting that the jury

is so instructed. *See* Eleventh Circuit Pattern Jury Instruction 4.2 ("Remember that anything the lawyers say is not evidence in the case.") Second, he said that their admission would create a substantial likelihood of jury confusion under Federal Rule of Evidence 403.

cy as to the credibility of witnesses" and inviting the "jury to draw certain inferences," two circumstances under which *McKeon* expressly stated a lawyer's comments would not be admissible. *McKeon,* 738 F.2d at 33. Also, the prosecutor's comments in *Brown I* were not clearly inconsistent with the evidence presented at DeLoach's trial. To say that DeLoach did not affirmatively advise Brown to lie to the savings and loans, does not mean that both DeLoach and Brown did not, in fact, conspire to lie and, later, lie to the savings and loans.

The comments of the prosecutor were neither statements of fact equivalent to a testimonial statement by the client nor clearly inconsistent with the Government's position in this case. *See Salerno,* 937 F.2d at 811; *McKeon,* 738 F.2d at 33. We conclude that the comments by the prosecutor in *Brown I* would be inadmissible as admissions of a party opponent even under the cases relied upon by DeLoach. So, we also conclude that the district court did not abuse its discretion in prohibiting the admission of the prosecutor's comments from *Brown I.*

## CONCLUSION

For the foregoing reasons, defendant's convictions are AFFIRMED.