[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14177
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cr-00020-LGW-BWC-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT IRA ANDERSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(May 22, 2020)

Before ROSENBAUM, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

Robert Ira Anderson challenges his sentence for maintaining a drug-involved

premises and possession of a firearm in furtherance of a drug-trafficking crime.  He

argues that the district court erred in calculating his guideline range and that counsel provided ineffective assistance at sentencing.  After review, we affirm.

## I.

In March 2018, Anderson pled guilty to one count of maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1), and one count of possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).  In the plea agreement, Anderson agreed that he used and maintained a house in Hortense, Georgia, for the purpose of others to distribute methamphetamine, and that he possessed a revolver in furtherance of that crime.

According to Anderson's presentence investigation report ("PSR"), his wife, Susan Anderson, distributed methamphetamine from their shared residence in Hortense.  Anderson knew that his wife used the residence to distribute methamphetamine, and he assisted her by driving her to purchase methamphetamine on November 5, 2015, and by constructing hidden compartments in the residence in which methamphetamine and cash were stored.  In addition, multiple firearms were found during a law-enforcement search of the Andersons' residence, including the revolver he admitted to possessing in furtherance of the § 856(a)(1) offense.

In calculating Anderson's guideline range, the PSR recommended a base offense level of 31 under U.S.S.G. § 2D1.8.  According to that guideline, the base offense level for a conviction under § 856(a)(1) is either "[t]he offense level from

2

§ 2D1.1 applicable to the underlying controlled substance offense," U.S.S.G. § 2D1.8(a)(1), or, "[i]f the defendant had no participation in the underlying controlled substance offense other than allowing use of the premises," four levels less than the applicable § 2D1.1 offense level, but not greater than level 26, U.S.S.G. § 2D1.8(a)(2). The PSR applied the more severe subsection, § 2D1.8(a)(1), using a converted drug quantity of 15,038 kilograms of marijuana, and derived a base offense level of 34, which it then reduced by three levels because Anderson received a minor-role adjustment. *See* U.S.S.G. § 2D1.1(a)(5)(B)(ii), (c)(3).

The PSR also applied a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, U.S.S.G. § 2D1.1(b)(12), and a two-level reduction for a minor role, U.S.S.G. § 3B1.2, for a total offense level of 31. Combined with a criminal-history category of II, the resulting recommended guideline imprisonment range for the § 856(a)(1) count was 121 to 151 months. The § 924(c) count required a mandatory consecutive term of at least 60 months of imprisonment. *See* 18 U.S.C. § 924(c)(1)(A)(i).

Anderson filed multiple objections to the PSR, two of which are relevant here. First, he argued that his base offense level should have been calculated under § 2D1.8(a)(2), rather than § 2D1.8(a)(1), because, in his view, he had no participation in his wife's drug-distribution activities other than allowing use of the premises. Second, he objected to the two-level enhancement for maintaining a drug-

3

involved premises under § 2D1.1(b)(12) because "he has already entered a plea of guilty to violating 21 U.S.C. § 856(a)(1), and his sentence is governed by U.S.S.G. § 2D1.8(a)(2)." In an addendum to the PSR, the probation officer disagreed with Anderson's arguments and concluded that § 2D1.8(a)(1) applied because Anderson participated in the underlying offense and that the § 2D1.1(b)(12) enhancement "would not be considered 'double counting' as the defendant seems to suggest."

When Anderson appeared for sentencing, defense counsel indicated that Anderson wished to withdraw most of his objections to the PSR. The district court questioned Anderson and defense counsel in detail and asked specifically whether they wanted to withdraw his objections to the calculation of the base offense level under § 2D1.8(a)(1) and to the enhancement for maintaining a drug-involved premises under § 2D1.1(b)(12). Anderson confirmed that he had read and discussed the PSR and the addendum with counsel and that he wanted to withdraw these objections. After he did so, the government recommended a reduction for acceptance of responsibility, which it previously had opposed.

Ultimately, the district court granted Anderson a three-level reduction for acceptance of responsibility and calculated a total offense level of 28 and a criminal history category of II. This established a guideline imprisonment range of 87 to 108 months, plus a consecutive term of 60 months for the § 924(c) offense. After granting the government's motion for a sentence reduction under U.S.S.G. § 5K1.1,

the district court imposed a total term of 120 months of imprisonment, consisting of a 60-month term as to the § 856(a)(1) offense and a consecutive 60-month term as to the § 924(c) offense.  The court advised that, regardless of the resolution of guideline-application issues, it "would have pronounced the exact same sentence based on simply the 3553 factors," including the nature of the offense and the offender.  Anderson now appeals.

## II.

Anderson first argues that the district court erred in calculating his guideline range.  He contends that the district court should have applied § 2D1.8(a)(2), rather than § 2D1.8(a)(1), because he did not participate in his wife's drug-trafficking activities other than to maintain the shared residence from which she distributed methamphetamine.  He also asserts that the court engaged in impermissible double counting by applying the enhancement under § 2D1.1(b)(12) because his sole drug conviction was premised on the same underlying conduct as the enhancement.

Ordinarily, we review the district court's interpretation of the guidelines *de novo*, its factual findings for clear error, and its application of the guidelines to the facts with due deference.  *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010).  Issues not timely raised below are generally reviewed for plain error only, which requires the defendant to show that an obvious error affected his substantial rights.  *United States v. Madden*, 733 F.3d 1314, 1321 (11th Cir. 2013).

But "we have held that a defendant waives a sentencing objection where he expressly withdraws the objection before the district court." *United States v. Cobb*, 842 F.3d 1213, 1222 (11th Cir. 2016); *see United States v. Horsfall*, 552 F.3d 1275, 1283–84 (11th Cir.2008); *United States v. Masters,* 118 F.3d 1524, 1525–26 (11th Cir. 1997). In other words, the "plain error doctrine is inapplicable" in a situation where a defendant knowingly withdraws an objection at sentencing. *Masters*, 118 F.3d at 1526; *see United States v. Olano*, 507 U.S. 725, 733–34 (1993) (explaining that "waiver is the intentional relinquishment or abandonment of a known right" and that waived issues are not reviewable).

Here, Anderson waived any argument he may have had challenging the calculation of his base offense level under § 2D1.8(a)(1) or the application of the enhancement under § 2D1.1. *See Cobb*, 842 F.3d at 1222; *Horsfall*, 552 F.3d at 1283–84; *Masters*, 118 F.3d at 1525–26. At sentencing, Anderson clearly and expressly withdrew his objections, which presented essentially the same grounds as he raises on appeal, to these guideline issues. By knowingly withdrawing these objections, Anderson waived appellate review, even for plain error. *See id.*

In any event, even if Anderson had not waived these arguments, they would still fail under plain-error review. *See Madden*, 733 F.3d at 1321. As to the base offense level, the record shows that Anderson "participat[ed] in the underlying controlled substance offense" beyond simply "allowing use of the premises." *See*

U.S.S.G. § 2D1.8(a)(1).   He drove his wife to conduct a methamphetamine transaction and constructed hidden compartments in the residence in which methamphetamine and cash were stored.  And beyond that, Anderson admitted in his plea agreement that he possessed a firearm in furtherance of the crime of maintaining a drug-involved premises.  *Cf. id.* § 2D1.8, cmt. n.1 ("[S]ubsection (a)(2) would not apply to a defendant who possessed a dangerous weapon in connection with the [underlying controlled substance] offense.").  Altogether, this conduct is sufficient to show that Anderson "assisted in the commission of the underlying controlled substance offense." *Id.*  Accordingly, § 2D1.8(a)(2) does not apply based on the undisputed facts of the PSR and the facts Anderson admitted by pleading guilty.  *See United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989) ("The findings of fact of the sentencing court may be based on . . . facts admitted by a defendant's plea of guilty, undisputed statements in the presentence report, or evidence presented at the sentencing hearing.").

As to the § 2D1.1(b)(12) enhancement, Anderson points to no decision from this Court or any other court holding that applying this enhancement where a defendant is convicted of an offense under § 856(a)(1) without an accompanying drug-trafficking conviction constitutes impermissible double counting.  *See United States v. Hoffman*, 710 F.3d 1228, 1232 (11th Cir. 2013) ("An error is not plain unless it is contrary to explicit statutory provisions or to on-point precedent in this

Court or the Supreme Court." (quotation marks omitted)).  So he cannot establish that any error was "plain."  *See id.*

Moreover, the guideline for § 856(a)(1) offenses, § 2D1.8, expressly directs courts to use "the offense level from § 2D1.1 applicable to the underlying controlled substance offense," without further limitation.  U.S.S.G. § 2D1.8(a)(1).  And the harm the § 2D1.1(b)(12) enhancement accounts for—the maintenance of a premises for the purpose of distributing a controlled substance—is not otherwise accounted for by § 2D1.1.  *See United States v. Dudley*, 463 F.3d 1221, 1226–27 (11th Cir. 2006) (stating that double counting a factor is permitted if the Commission intends that result and each guideline sentence in question concerns conceptually distinct notions related to sentencing).  So we cannot say it is plain or obvious that the Sentencing Commission did not intend for the § 2D1.1(b)(12) enhancement to apply where a defendant is convicted under § 856(a)(1) without an accompanying drug-trafficking conviction.  *See id.* at 1227.

## III.

Finally, Anderson maintains that his attorney was ineffective for withdrawing his guideline-calculation objections.[1]  To prove a claim of ineffective assistance, the defendant must show both that his counsel's performance was deficient and that he

---

[1] "An ineffective-assistance-of-counsel claim presents a mixed question of law and fact, which this Court reviews *de novo*."  *Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009).

was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Unless the record is "sufficiently developed," we ordinarily will not entertain claims for ineffective assistance of counsel on direct appeal. *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010). The preferred method for raising such claims is through a 28 U.S.C. § 2255 motion. *Id.*

Anderson asserts that the record is sufficiently developed to decide these claims. Insofar as counsel's performance is at issue, we disagree, as the record does not fully reflect the strategic reasons behind counsel's decisions or the substance of his advice to Anderson.

As to prejudice, however, the record is sufficiently complete to conclude that Anderson cannot demonstrate a reasonable probability of a different result. Initially, we are not persuaded that these objections were meritorious, for the reasons discussed above. And "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client." *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992).

But even if we assume that both objections would have been sustained if advanced by counsel, the district court's comments show that there is not a reasonable probability that the court would have imposed a different sentence. The court expressly stated that it would have imposed the same sentence in light of the § 3553(a) factors regardless of its guideline-range calculations. *See Osley v. United States*, 751 F.3d 1214, 1228 (11th Cir. 2014) (relying on the district court's

9

comments at sentencing to hold that the defendant was not prejudiced by counsel's failure to assert a sentencing objection).

Nor is there a reasonable probability that Anderson would have prevailed on appeal if the district court had rejected his arguments. Because the court stated that it would have imposed the same sentence without regard to the guideline range, we likely would have reviewed Anderson's sentence for harmlessness on appeal, asking whether "the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor." *United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006). If the two guideline-application issues had been resolved in Anderson's favor, his total offense level at best would have been 23,[2] yielding a guideline range of 51 to 63 months. *See* U.S.S.G. § 2D1.8(a)(2); *Id.* § 2D1.1(b)(12). Anderson's sentence was still within this guideline range, "so we expect [it] to be reasonable," *United States v. Dixon*, 901 F.3d 1322, 1351 (11th Cir. 2018) (quotation marks omitted), and he does not otherwise identify factors suggesting that a 60-month sentence for the § 856(a)(1) offense was unreasonable.

For these reasons, Anderson cannot show that he was prejudiced by counsel's alleged ineffectiveness at sentencing.

**AFFIRMED.**

---

[2] We note, however, that if Anderson maintained his objection to the base offense level, the government likely would have opposed a reduction for acceptance of responsibility, which, in turn, may have increased Anderson's total offense level.